KILLIAN & SALISBURY, P.C.
Eugene Killian, Jr. (EK-9972)
77 Brant Avenue
Suite 115
Clark, NJ  07066
732-827-8600
*Attorneys for Defendant, Catherine Lee Werner*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

METROPOLITAN LIFE INSURANCE COMPANY,

          *Plaintiff,*

v.

KATHRYN CLAIRE CAMPBELL,
CATHERINE LEE WERNER, and
SHARON CAMPBELL,

          *Defendants.*

Civil Action No. 07 CV 7310 (GBD)

**DECLARATION OF CATHERINE WERNER IN SUPPORT OF HER OPPOSITION TO DEFENDANTS KATHRYN AND SHARON CAMPBELL'S MOTION TO DISMISS AND IN OPPOSITION TO METLIFE'S CROSS-MOTION**

CATHERINE WERNER, of full age, declares as follows:

1. I am a named defendant in this matter and a primary beneficiary under the life insurance policy of Cole Campbell. I submit this Declaration in support of my opposition to defendants Kathryn and Sharon Campbell's motion to dismiss and in opposition to MetLife's cross-motion.

2. I am personally familiar with the facts of this case, and submit this Declaration in order to clear up many of the misstatements and misrepresentations in Kathryn and Sharon Campbell's motion.

3. The dispute in this case is based on the disagreement between the parties as to who

is entitled to the remaining proceeds from the life insurance policy of my husband Cole C. Campbell ("Cole"), who died in Reno, Nevada on January 5, 2007.

4. Cole was the owner of a life insurance policy with a face amount of $1,000,000.00. The policy was a Flexible Premium Life Policy, Group: MetLife GVUL ACH Group, Policy No. 0000003220.

5. After Cole's death from injuries sustained in a car accident, I filed a claim with MetLife for the proceeds under the policy. At that time I was informed by MetLife that I would only receive 70% of the proceeds under the policy and that the remaining 30% would be distributed in the following manner: 20% to Kathryn Claire Campbell (Cole's daughter) and 10% to Sharon Campbell (Cole's ex-wife).

6. I immediately contacted MetLife to contest the distribution of 30% of the proceeds of the policy to Kathryn Claire Campbell and Sharon Campbell. I also sent correspondence to Kathryn and Sharon Campbell to explain that Cole intended that I (his wife) should be the sole beneficiary under the policy.

7. To date, I have been paid 70% of the proceeds of the Cole's policy as there is no dispute as to this amount; however, MetLife has refused to pay me the remaining 30%.

8. Cole clearly intended that I should be the sole, 100% beneficiary under his policy, which was issued on August 1, 1996, with a maturity date of August 1, 2049.

9. Cole had a daughter from his first marriage to Kathryn Newsome Ahlport. Cole's daughter's name is Kathryn Claire Campbell.

10. In 1996, Cole was married to his second wife, Sharon Dennis Campbell (a.k.a. Sharon Kilby Campbell). Cole got a divorce from his second wife Sharon Dennis Campbell and a settlement

DECLARATION OF WERNER - 2

was reached that included a fixed alimony payment and a requirement that he provide for Sharon Dennis Campbell in his life insurance policy until such time as his alimony payments were satisfied. Attached hereto as **Exhibit A** is a copy of the settlement agreement reached after the divorce of Cole and his second wife Sharon Dennis Campbell.

11. On February 16, 2001, Cole provided written authorization to Paragon Life Insurance Company, a MetLife Company, to accept electronic transaction requests via Paragon's eServices website. A copy of this authorization is attached hereto as **Exhibit B**. Among other requests, Cole used this form to authorize changes to his designated beneficiaries.

12. On March 11, 2003, Cole used the eServices website to change his primary beneficiaries on his Policy to 70% to me; 20% to his then only child, Kathryn Claire Campbell; and 10% to Sharon Campbell. At this time, Cole also changed his address to reflect our new home in Chicago, Illinois.

13. Cole was required to provide for Sharon Campbell because of the settlement agreement after their divorce; however, Cole's alimony and divorce obligations to his ex-wife Sharon Dennis Campbell were satisfied completely in May 2004 and so was his obligation to provide for her in his life insurance policy. Attached hereto as **Exhibit C** is the letter of satisfaction of the divorce obligations from Sharon Campbell.

14. On February 13, 2005, Cole and I had a son, Clarke Werner Campbell. At the time, I, Cole, and our son were living in Reno, Nevada after having moved there from Chicago, Illinois.

15. Following the birth of our son in February 2005, Cole revised his Last Will and Testament. The Will, executed on August 6, 2005, stated in Article Four that: "I expressly leave no money to Kathryn Newsome Ahlport (August 19, 1954) or Sharon Kilby Campbell (December 13,

1939)." In his will, Cole also expressly provided for me and his two children, Clarke Werner Campbell and Kathryn Claire Campbell.

16. On July 29, 2005 Cole went to the MetLife website to access his policy in order to make changes to the terms of the policy. The MetLife GVUL eServices website was established by MetLife for its insurance policyholders so that the owner of an insurance policy could effectively make certain changes to the policy online. Changing beneficiaries was one of the changes policyholders were permitted to make using the eServices system.

17. On July 29, 2005, when Cole reviewed the "Primary Beneficiary Information," I was the only person listed as a primary beneficiary under the policy and I was the only person appearing on the "Primary Beneficiary Information." Although there was space on the screen for additional beneficiaries, neither Kathryn Claire Campbell nor Sharon Campbell's names were listed as a primary beneficiary. Attached hereto as **Exhibit D** is the GVUL eServices screen showing Catherine Lee Werner as the only primary beneficiary.

18. Faced with MetLife's online records showing that I was the only primary beneficiary, Cole did not make any changes in this area of the screen.

19. On several occasions in 2005 and 2006 Cole confirmed that I was supposed to be the only beneficiary under the policy. For example, following the birth of Clarke Werner Campbell, I was not working and was financially dependent on Cole's salary. Cole's other child, Kathryn Claire Campbell was married and had been employed and independent of Cole for several years. Naturally, the policy proceeds would be used to care for our son, Clarke, in the event of Cole's untimely death.

21. In addition, Cole had meetings and communications with Brian Stallcop, associated with Edward Jones, to plan and discuss the financial needs and assets to raise our infant son.