Attached hereto as **Exhibit E** is a copy of an Affidavit signed by Brian Stallcop, which demonstrates that I was intended to be the sole primary beneficiary under the policy.

22.  During the summer and fall of 2006, Cole also had discussions with a New York Life Insurance agent, Michael Norman, to try and secure more cost effective life insurance. In a meeting on August 15, 2006, Cole's verbal answers regarding how Cole intended to provide for me should I be a surviving spouse, were written on a "Survivor Income Needs Worksheet." Question Number 3 and Cole's response were as follows: "How much of your current life insurance would be available to generate monthly income? $1,000,000." The response to this question clearly indicates Cole's intention that I was to receive the entire proceeds from the policy. Attached hereto as **Exhibit F** is a copy of the survivor income needs worksheet dated, August 15, 2006.

23.  In the fall 2006, Cole completed paperwork and submitted himself to a physical with the purpose of obtaining a replacement to his current life insurance policy. When Cole applied for a New York Life insurance policy, I was listed as the 100% primary beneficiary. Attached hereto as **Exhibit G** is a letter from Michael Norman of New York Life confirming that Werner was the only beneficiary. Attached hereto as **Exhibit H** is the signed replacement policy request dated September 13, 2006.

24.  On March 26, 2007, I sent correspondence to MetLife informing them that I was disputing the payment of 30% of the policy proceeds to Kathryn and Sharon Campbell and the reasons therefor.

25.  MetLife sent correspondence to me, Kathryn and Sharon Campell on June 26, 2007 stating that "it is unclear whether Ms. Werner is the proper beneficiary, or Ms. Kathryn Claire Campbell and Ms. Sharon D. Campbell are the proper beneficiaries. Consequently, MetLife is

presented with questions of facts and/or law that it cannot resolve without exposing itself to the danger of double liability."

26. MetLife further stated that it is "required by law to initiate what is called an interpleader action to permit a court to decide between the claims."

27. MetLife suggested that before the interpleader action is filed, the parties should spend 30 days to try and come to an amicable resolution of the claims to preserve the 30% proceeds from litigation costs and fees. Accordingly, within the 30-day time frame I sent settlement proposals to both Kathryn and Sharon Campbell in an effort to resolve the matter short of litigation.

28. Rather then discussing the possible settlement of the claims, Kathryn and Sharon Campbell, filed an action in Nevada on July 20, 2007, in spite of the knowledge that MetLife intended on filing an interpleader action in New York, but had refrained from doing so specifically to provide the parties time to negotiate a settlement. This tactic by Kathryn and Sharon Campbell appears to have been done simply as a means of forum shopping and to win the "race to the court."

29. On August 15, 2007, MetLife, as it stated it would do, filed its Complaint in Interpleader naming myself, Kathryn Claire Campbell, and Sharon Campbell as defendants. On September 7, 2007, defendants Kathryn Claire Campbell and Sharon Campbell filed their Motion to Dismiss Complaint or Stay Action.

30. Within the papers of Kathryn and Sharon Campbell's motion are many misstatements and misrepresentations, which I intend to clear up by the submission of this declaration joining in MetLife's opposition.

31. Specifically, on page 2, Kathryn and Sharon Campbell claim they are entitled to 20% and 10% of the insurance proceeds respectively. However, as described above, Cole intended that

I be the primary beneficiary and believed that was to be the case when he proceeded to make changes to his policy on July 29, 2005. Therefore, at a minimum there is a genuine dispute as to who is entitled to the remaining proceeds.

32.  Kathryn and Sharon also claim that "[Cole] mistakenly neglected to remove Claire and Sharon as beneficiaries." The truth of the matter was that Cole relied on MetLife's eServices system which showed that I was the only beneficiary. This designation was consistent with Cole's intentions so he did not take any steps to address or change the beneficiary designation. Further, I have been informed by a MetLife representative that Cole, by viewing the print screens alone, would not have been able to see any other persons that MetLife would have had as listed beneficiaries and in order to find out the other named beneficiaries, Cole would have had to "second guess" what he saw on the eServices screen and phone MetLife. If true, a requirement to pursue additional information via phone or otherwise would constitute a contradiction of the intended purposes of the eServices system.

33.  On page 7, section 2, Kathryn and Sharon Campbell claim that the interpleader action is better suited in Nevada, claiming that the parties have appeared in that action and the court has obtained personal jurisdiction over the parties. However, the only reason the suit was filed in Nevada first was because Kathryn and Sharon took advantage of the time MetLife gave the parties to try and negotiate a settlement, despite having he knowledge that MetLife planned on filing an interpleader in New York. Further, Kathryn and Sharon only obtained person jurisdiction over me when they knew I was in the middle of moving from Nevada to Missouri. Kathryn and Sharon rushed to serve me prior to my leaving Nevada though technically speaking, at the time I was served with the Nevada lawsuit I was already a resident of Missouri having closed on my Missouri home in early

DECLARATION OF WERNER - 7

July. In fact, some of Cole's property that Kathryn has requested by stipulation is actually located in Missouri.

34. On page 8, Kathryn and Sharon Campbell claim that Nevada is the location where the events in the suit take place; however, this is also a misstatement. Cole first signed up for the life insurance policy while living in Missouri. The changes to the policy, which took place in 2003 were made while Cole was living in Illinois. The only events that took place in Nevada were in 2005 when Cole relied on the eServices website and accordingly did not change the beneficiary designation on the policy because he believed it accurately reflected his intent and Cole's untimely death in 2007. At this time, none of the parties are living in or anywhere near Nevada, which makes Nevada a particularly inconvenient forum.

35. Further, on page 8, Kathryn and Sharon make the completely incorrect statement that I am in agreement that Nevada is the more convenient forum to litigate these matters. Not only have I never made these statements, so it is unclear how Kathryn and Sharon Campbell formulated the belief that this was the case, but the exact opposite is true. Litigating in Nevada is not convenient for me at all, and presumably not for the other defendants as well, as they do not live anywhere near Nevada. Further, I would prefer to litigate this case in the Missouri federal court and have accordingly reserved my right to have the case transferred to a more convenient and appropriate forum.

36. Finally, on page 10 of the motion, Kathryn and Sharon incorrectly state that no parties object to Nevada as the forum of choice. This is once again a mischaracterization as I am clearly opposed to Nevada as the forum and have therefore joined in MetLife's opposition to Kathryn and Sharon's motion to dismiss.

37. In addition to the misstatements in the motion to dismiss there are also various misstatements and misrepresentations in the Affidavit of Barry Breslow. Specifically, paragraphs 6 and 7 of the Breslow Affidavit are not currently accurate as there is quite obviously a dispute as to who is entitled to the remaining 30% of the life insurance proceeds. As stated above, it was Cole's clear intent to have me as the sole beneficiary under the policy.

38. Paragraph 10 also falsely claims that I believe Cole mistakenly neglected to remove Kathryn and Sharon as beneficiaries under the policy; however, as described above, it was Cole's reliance on MetLife's eServices website that resulted in Cole's failure to change the beneficiary designation, as he believed it accurately reflected his intent.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on November ____, 2007.

_____
CATHERINE LEE WERNER

37. In addition to the misstatements in the motion to dismiss there are also various misstatements and misrepresentations in the Affidavit of Barry Breslow. Specifically, paragraphs 6 and 7 of the Breslow Affidavit are not currently accurate as there is quite obviously a dispute as to who is entitled to the remaining 30% of the life insurance proceeds. As stated above, it was Cole's clear intent to have me as the sole beneficiary under the policy.

38. Paragraph 10 also falsely claims that I believe Cole mistakenly neglected to remove Kathryn and Sharon as beneficiaries under the policy; however, as described above, it was Cole's reliance on MetLife's eServices website that resulted in Cole's failure to change the beneficiary designation, as he believed it accurately reflected his intent.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on November 26, 2007.

*/s/ Catherine Lee Werner*
CATHERINE LEE WERNER