UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

METROPOLITAN LIFE INSURANCE
COMPANY,

                              Plaintiff,

      -against-

KATHRYN CLAIRE CAMPBELL,
CATHERINE LEE WERNER and
SHARON CAMPBELL,

                              Defendants.
------------------------------------------------------------X

**ECF FILING**

07 CV 7310 (GBD)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
THE DEFENDANTS, KATHRYN CLAIRE CAMPBELL AND SHARON CAMPBELL,
TO DISMISS THE COMPLAINT OF THE PLAINTIFF, METROPOLITAN LIFE
INSURANCE COMPANY, OR TO STAY THIS ACTION PENDING RESOLUTION OF
THE CONCURRENT AND PARALLEL NEVADA ACTION; AND OPPOSITION TO
THE PLAINTIFF'S CROSS-MOTION TO ENJOIN THE NEVADA ACTION AND TO
<u>DEPOSIT FUNDS IN INTERPLEADER</u>**

The Defendants, Kathryn Claire Campbell ("Claire") and Sharon Campbell ("Sharon"), by and through their attorneys, Wormser, Kiely, Galef & Jacobs LLP, respectfully submit this Memorandum of Law (i) in reply to the respective opposition of the Plaintiff, Metropolitan Life Insurance Company (the "Plaintiff") and the Defendant, Catherine Lee Werner ("Werner") to – and in further support of – the Motion of Claire and Sharon to Dismiss the Plaintiff's Complaint in Interpleader (the "Interpleader"), or alternatively, to stay this Interpleader pending resolution of the concurrent and parallel action filed in the Second Judicial District Court of the State of Nevada, Case Number CV07-01631 (the "Nevada lawsuit") (collectively, the "Motion to Dismiss or Stay"); and (ii) in opposition to the Cross-Motion of the Plaintiff to enjoin the Nevada lawsuit and to deposit the

funds in Interpleader into this Court (the "Cross-Motion").

## I.   INTRODUCTION

This Interpleader should be dismissed, or alternatively, stayed pending resolution of the concurrent and parallel Nevada lawsuit. The Nevada lawsuit is better suited to adjudicate this case. The Plaintiff and Werner argue that, simply because this Court <u>may</u> entertain jurisdiction over this Interpleader under federal law, it is therefore conclusive that this Court <u>should</u> proceed with this Interpleader and enjoin the Nevada lawsuit. For reasons of comity, judicial economy and convenience to the parties, Claire and Sharon ask this Court to exercise its discretion and abstain from adjudicating this Interpleader, pending resolution of the Nevada lawsuit. Furthermore, Claire and Sharon argue that, for these same reasons, an injunction preventing the Nevada lawsuit from proceeding is not warranted and the Cross-Motion should be denied.

## II.   ARGUMENT

The Plaintiff and Werner both oppose the Motion to Dismiss or Stay. Read collectively, the respective papers of the Plaintiff and Werner offer two arguments in opposition to the Motion to Dismiss or Stay. First, the Plaintiff and Werner argue that, because this Court has jurisdiction over this Interpleader pursuant to 28 U.S.C. §1335, there is no reason why this Court should not exercise jurisdiction over this action and enjoin the Nevada lawsuit. Second, the Plaintiff and Werner argue that the <u>current</u> residences of the parties are the primary – if not the only – considerations, while conveniently failing to mention that this entire dispute arose from acts and events that occurred in Nevada. In any event, neither the Plaintiff nor Werner can overcome the facts that (i) this Interpleader was filed after each of the parties had been served with process in the Nevada lawsuit, (ii) the relief sought herein by the Plaintiff was/is already available in the Nevada lawsuit, and (iii) there is no reason why the Nevada Court cannot completely and adequately resolve this matter, as the Nevada lawsuit is a convenient, competent and expeditious vehicle to resolve <u>all</u> of the present claims.

A. This Court Should Exercise Its Discretion to Dismiss or Stay This Interpleader Action Under the Abstention Doctrine.

This Court has discretion to exercise jurisdiction over this Interpleader and the related counterclaims. However, that does not necessarily mean that the Court should exercise that jurisdiction. It is settled law in the Second Circuit that, in certain circumstances, district courts should "decline adjudicating issues raised in an interpleader action that can be fairly adjudicated in state court." National Union Fire Ins. Co. v. Karp, 108 F.3d 17, 21 (2d Cir. 1997). As first discussed in Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), and then discussed in Karp, when another action (i) is pending in state court, (ii) involves the same parties and (iii) presents an opportunity for ventilation of the same state-law issues, "a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." Karp, 108 F.3d at 22 (quoting Wilton, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214).

The Plaintiff and Werner ask this Court to ignore the Wilton factors and instead demand that Claire and Sharon demonstrate that this Court lacks jurisdiction to hear this Interpleader. As stated above, this Court retains jurisdiction to hear the entirety of this dispute. However, Claire and Sharon submit that Nevada is a more appropriate forum for adjudicating these claims, and that this Court should defer to the Nevada lawsuit. Considering that the Plaintiff brought this Interpleader for claims identical to those already present in the Nevada lawsuit, after having been served with process in the Nevada lawsuit, the Plaintiff – and not Claire and Sharon – should be required to convince this Court that "the claims of all parties in interest can[not] satisfactorily be adjudicated in the pending state court proceeding." Karp, 108 F.3d at 22. Neither the Plaintiff nor Werner attempts such a showing.

The Plaintiff goes to some length to explain that it was compelled to bring this Interpleader in order to "preserve the available funds from depletion by litigation and costs." Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss or Stay, dated November 9, 2007 (the "Plaintiff's Opposition"), at 2. The Plaintiff even goes so far as to claim that it generously did the parties a favor by giving them time to discuss the dispute before it was compelled to commence this

3

Interpleader. This "favor" begs the question why Claire and Sharon, who are clearly entitled to the proceeds, should be forced to defer to the Plaintiff's preference in deciding how and where to pursue the proceeds which rightfully belong to them. Claire and Sharon chose to litigate this dispute in Nevada -- where their lawyers were located, where Werner resided at the time the dispute arose, where the accident occurred that took Cole Campbell's life and where his estate is currently being probated.

In addition, the Plaintiff did not advise Claire or Sharon (or presumably Werner) that it might commence an interpleader action in the Southern District of New York. Based on the Plaintiff's notification of the dispute, one could surmise that the Plaintiff would attempt to commence an interpleader action in Nevada state court. In fact, given the then-residences of the prospective parties, commencement of the interpleader in Nevada would have been the most sensible course of action. Surely, the Plaintiff is not arguing that Claire and Sharon were required to wait and see in which venue, if any, the Plaintiff would choose to bring the prospective interpleader action.

The Plaintiff could have saved -- but did not save -- the parties, and this Court, the unnecessary time and expense associated with this Interpleader action had the Plaintiff simply asserted a defensive interpleader claim in the Nevada lawsuit. There is no reason why the Plaintiff could not have asserted such an interpleader claim in the Nevada lawsuit; and, presumably, there would have been no difference in the relief sought by (or available to) the Plaintiff, and/or the evidence offered, in the Nevada court. Instead, the Plaintiff failed to assert such an interpleader claim in the Nevada lawsuit and has caused, and continues to cause, Claire, Sharon and Werner (and presumably, the Plaintiff itself) additional, substantial and unnecessary time and expense in connection with this Interpleader action.

B. <u>Application of the Wilton Factors Favors Abstention.</u>

The Plaintiff and Werner omit any reference to, let alone the consideration of, all but one of the <u>Wilton</u> factors, taking the apparent position that the current residences of the parties are sufficient to overcome all other relevant considerations. When the totality of the circumstances is evaluated,

the application of the Wilton factors supports this Court's abstention.

A useful review of the Wilton factors can be found in NYLife Distributors, Inc. v. The Adherence Group, Inc., 72 F.3d 371 (3d Cir. 1996).[1] The NYLife Court explains that, in deciding whether abstention is appropriate, a district court should, as threshold matters, examine (i) "whether the state court action is indeed parallel . . . since the very basis for deference is the avoidance of duplicative litigation," and (ii) which forum will protect the stakeholder more effectively while also providing the claimants with an "efficient, convenient, and expeditious vehicle to settle their dispute." Id. at 383. Additionally, the district court "should examine 'the scope of the pending state court proceeding . . . [and] ''whether the claims of all parties in interest can be satisfactorily adjudicated in [the pending state court] proceeding.''" Karp, 108 F.3d at 22 (alterations in original) (quoting Wilton, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214).

        1.      No Genuine Dispute Exists That This Interpleader and the Nevada Lawsuit Are Parallel and Concurrent.

The issues presented in this Interpleader are identical to those already existing in the Nevada lawsuit. Indeed, Werner's counterclaim in this Interpleader seeks adjudication of the same claims Werner pleaded in the Nevada lawsuit. This is clearly a case of parallel and concurrent state and federal actions. The Plaintiff and Werner – seemingly acknowledging, and then ignoring, the fact that this Interpleader seeks determination of questions of law and fact which are already properly before the Nevada court – attempt to discount this parity of claims in the two actions.

The Plaintiff suggests that, due to the streamlined procedures for federal interpleader, this Court is better suited to dispense with its interpleader claim. See Plaintiff's Opposition, at 3-5. However, Werner has now filed counterclaims against the Plaintiff, asserting the same claims for relief that she originally asserted in the Nevada lawsuit. As a result, this case is no longer a "pure"

---

[1] The Plaintiff attempts to distinguish NYLife, arguing that the case undermines the Motion to Dismiss or Stay. The Plaintiff's argument, however, is premised on a misreading of the case, as the Third Circuit remanded the case to the district court specifically to address and apply the enumerated Wilton factors, cited by Claire and Sharon. 72 F.3d at 383.

interpleader, and the Plaintiff's argument that proceeding with this case will not "delay" the Nevada lawsuit is no longer accurate. This Court has now been asked to adjudicate this Interpleader as well as all related claims. Thus, Karp becomes increasingly more instructive.

In Karp, the district court abstained from hearing the plaintiff's interpleader claim, finding that the issues presented there were more appropriately adjudicated in the previously-filed state court action. Karp, 108 F.3d at 19. In that case, one of the appellants was the estate of a person who died in an airplane crash. The estate commenced an action in Connecticut state court against the decedent's insurer to recover (i) proceeds from the insurance policy and (ii) damages for unfair insurance practices in violation of Connecticut law. See id. Subsequently, the insurer filed an interpleader action pursuant to 28 U.S.C. §1335 in the Northern District of New York, naming the estate as one – of many – defendants. The insurer then sought an injunction as to the Connecticut action. See id. at 20. The estate and the other interpleader defendants moved to dismiss the action, or alternatively, to stay the action pending resolution of the Connecticut lawsuit. See id. The district court applied the Wilton factors and determined that the Connecticut action was "a concurrent state proceeding and the state court was better adapted . . . to resolving the coverage issues." Id.

On appeal to the Second Circuit, the insurer argued that (i) the district court erred by abstaining, (ii) the district court applied the wrong standard in deciding whether to abstain, and (iii) the district court erred in determining that the Connecticut action was a concurrent proceeding. The Second Circuit disagreed with each of the insurer's arguments. In analyzing Wilton, the Second Circuit noted that the insurer's action was "not a typical interpleader action," explaining that the action was not a case of two parties seeking mutually exclusive claims to a finite amount. Id. at 21. Instead, the Court explained that, because (i) the total amount at issue was in excess of the policy limits and (ii) the insurer sought other forms of declaratory relief, "its arguments against abstention based on the allegedly 'pure' nature of its interpleader action are less tenable." Id. The Second Circuit's reasoning is applicable to the case at bar.

In this case, the Plaintiff conclusorily asserts that this action is a typical interpleader action. The Plaintiff seeks to interplead the proceeds and then wash its hands of this dispute. However,

given Werner's counterclaims against the Plaintiff and cross-claims against Claire and Sharon, the Plaintiff's allegedly "pure" interpleader now involves claims for damages against all other parties, which increases the Plaintiff's exposure above and beyond the total amount intended to be interpleaded. Thus, as in Karp, the Plaintiff's argument that abstention is not warranted because of the "pure" nature of this Interpleader action is less tenable. Indeed, whatever efficiency the Plaintiff claims will exist as a result of the federal interpleader practice and procedure is negated by the addition of Werner's claims for damages. In this respect, the Nevada lawsuit is just as suitable a vehicle to adjudicate all of the present claims as the streamlined federal interpleader procedures.

> 2. Nevada Provides the Parties an Efficient, Convenient, and Expeditious Vehicle to Settle the Disputes.

The Plaintiff and Werner argue that this dispute does not belong in Nevada because there is no nexus between Nevada and this dispute. This argument is not supported by the facts as they existed at the time of the commencement of this action. Furthermore, whatever connection Nevada has to this litigation is certainly more tenable than the putative nexus between the Southern District of New York and this dispute.

Prior to the filing of this Interpleader action, Claire, Sharon and Werner had each obtained Nevada counsel for the purpose of adjudicating issues related to the death of Mr. Campbell. The parties retained Nevada lawyers to assist them in the probating of Mr. Campbell's estate. At the commencement of the dispute over the insurance proceeds, the parties already had Nevada lawyers who were knowledgeable about the case, and who are knowledgeable about Nevada practice and procedure. The Nevada lawsuit is poised to "fairly adjudicate" the disputes and will protect the Plaintiff's interests. See Karp, 108 F.3d at 21. Additionally, proceeding with the Nevada lawsuit would have spared, and will spare, the parties substantial time and expense. As a result of Plaintiff's filing this action, the Defendants were required to retain New York counsel to litigate this action, which has resulted – and continues to result – in substantial additional costs to Claire, Sharon, and presumably, Werner. The Plaintiff claims that it is concerned about preserving the insurance proceeds from depletion by litigation and costs, when, in fact, the expense to the Defendants has

substantially increased as a result of this duplicative and unnecessary litigation.

Moreover, there is no evidence that the Nevada litigation will not be able to proceed to resolution in a swift and efficient manner. Discovery has commenced in the Nevada lawsuit, and the parties are actively involved in document production. The trial in the Nevada lawsuit is set for August 8, 2008. The parties have already held the mandatory "meet-and-confer" where the parties produced their initial disclosure of documents and witness lists. The Nevada lawsuit is on track for a expeditious resolution.

Other than expressing a desire to litigate in New York, the Plaintiff has not presented any support for its contention that this Interpleader action is likely to lead to a more expeditious conclusion. In sum, the Nevada lawsuit is sufficient to protect whatever interests the Plaintiff was attempting to protect when it filed this duplicative interpleader. The Nevada lawsuit is progressing satisfactorily, with discovery ongoing. The disposition of this Motion alone (which included two requests by the Plaintiff for extensions of time, as well as the Plaintiff's Cross-Motion) will have taken more than four months.

### 3. The Authority Cited by the Plaintiff in Support of its Argument Against Abstention is Inapposite.

First, it should be noted that the Plaintiff mischaracterizes and misrepresents the disposition of NYLife. The Plaintiff states that, in that case, the Third Circuit "actually reversed the district court's grant of the exact relief that [Claire and Sharon] seek here – dismissal of a federal interpleader action." Plaintiff's Opposition, at 5 (emphasis omitted). Although the Third Circuit ultimately remanded the case to the district court, the basis for doing so had nothing to do with the facts of the case at bar, nor can the disposition of NYLife have any relevance here.

Contrary to the Plaintiff's recitation of the factual and procedural history in NYLife, the Third Circuit remanded the case to the district court because the district court had (i) applied the erroneous standard in deciding whether abstention was appropriate, NYLife, 72 F.3d at 382, and (ii) erroneously concluded that all of the federal claims had been dismissed, id. at 375. In determining whether abstention was appropriate, the district court had erroneously applied the more narrow

8

Colorado River abstention doctrine, when it should have applied the more discretionary Wilton factors. See id. at 379. Accordingly, the Third Circuit remanded the case to the district court "for it to exercise its sound discretion in deciding whether to dismiss the action in favor of the [parallel state court proceeding.]" Id. at 382. The Court then laid out the Wilton factors – which were adopted by the Second Circuit a year later in Karp. Id. at 382-83. Contrary to the Plaintiff's implication, NYLife does not offer the support for the arguments of the Plaintiff and Werner.

The second case cited by the Plaintiff is Ashton v. Paul, 918 F.2d 1065 (2d Cir. 1990). The Plaintiff cites Ashton for the proposition that federal interpleader provides stakeholders a method whereby they "can avoid being subjected to inconsistent judgments in different fora." Plaintiff's Opposition, at 8. Claire and Sharon do not dispute the accuracy of this statement, but they do question its relevancy in determining why the Nevada lawsuit cannot also present the same protection against inconsistent judgments. Indeed, an examination of the Ashton case reveals that the court there was presented with a set of facts totally distinguishable from the germane facts here.

In Ashton, the district court refused to abstain from hearing the interpleader claim, in large part, because one of the claimants to the interpleaded funds took the position that it was not amenable to the jurisdiction of the state court action nor bound by any judgment rendered therein. 918 F.2d at 1070. Thus, in Ashton, the stakeholder was literally facing the possibility of inconsistent judgments in different fora, and the district court declined to abstain in order to protect the stakeholder's interest. In the case at bar, no such risk exists. If the case is litigated in Nevada, the Plaintiff will be adequately protected, and will get its day in court. No possibility of competing conflicting judgments is present here. Accordingly, Ashton is inapposite.

Lastly, the Plaintiff cites New York Life Ins. Co. v. Connecticut Dev. Auth., 700 F.2d 91, 96 (2d Cir. 1983), for the proposition that this Court "could exercise jurisdiction over related claims for consequential damages." Plaintiff's Opposition, at 8. Again, Claire and Sharon do not dispute that this Court retains jurisdiction to hear each of the claims presented in this action. Instead, Claire and Sharon argue that this Court should abstain from exercising that jurisdiction in light of the parallel, concurrent and competent Nevada lawsuit. In any event, the case at bar is distinguishable from New

9

York Life.

In New York Life, the district court enjoined the interpleader defendant from pursuing his independent tort claims in state court. However, as the Second Circuit made clear, the district court did not do so because it had concluded that it was within the courts "power and discretion" to adjudicate the independent state court claims. Id. at 96. Rather, the district court enjoined the defendant on the belief that the defendant had consented to the injunction. The Second Circuit remanded the case to the district court to determine whether, in fact, the defendant had consented to the injunction. See id. As with Ashton, New York Life is inapposite to the case at bar, and offers no relevant considerations to the facts here. What is relevant are the considerations of the Wilton factors as laid out in NYLife and Karp, which counsel that:

> "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." Karp, 108 F.3d at 22.

Such is the case here. The Nevada lawsuit is an efficient, competent and expeditious vehicle to adjudicate this dispute. This Interpleader action is simply duplicative and unnecessary.

### IIII. CONCLUSION

The Plaintiff's Interpleader action should be dismissed, or alternatively, stayed pending resolution of the Nevada lawsuit. The Nevada lawsuit is better suited to adjudicate this case. Trial is set to begin this Summer. The parties have already held the mandatory "meet-and-confer" conference, and produced initial documentary discovery and witness lists. The Nevada lawsuit is on track for a expeditious disposition. For reasons of comity, judicial economy and convenience to the parties, Claire and Sharon ask this Court to exercise its discretion and abstain from adjudicating this concurrent and parallel Interpleader action, pending resolution of the Nevada lawsuit. Furthermore, for the same reasons stated above, an injunction preventing the Nevada lawsuit from proceeding is not warranted and the Plaintiff's Cross-Motion should be denied.

Dated: New York, New York
December 7, 2007

                Respectfully submitted,

                WORMSER, KIELY, GALEF & JACOBS LLP

        By: _____/S/_____
                John T. Morin (JM-0390)
                Sean T. O'Leary (SO-4542)

                825 Third Avenue
                New York, New York 10022
                (212) 687-4900

                Attorneys for Defendants
                Kathryn Claire Campbell and Sharon Campbell